# EXHIBIT G



*American Enterprise Institute for Public Policy Research*

No. 5 • October 2007

Liability Outlook

# A Billion-Dollar "Harm-Less" Lawsuit

## By Ted Frank

*The Fair Credit Transactions Act, intended to protect against identity theft, permits statutory damages of $100 to $1,000 plus punitive damages for "willful" violations when receipts expose credit card information—even if the exposed information could not possibly lead to identity theft. Because Congress failed to cap damages, and because class action damages can run into the billions, courts or the Congress must intervene to prevent dozens of businesses from being bankrupted arbitrarily for immaterial violations of the law.*

In 2003, Congress passed the Fair Credit Transactions Act (FACTA), with the goal of preventing identity theft. The Act restricts information that can be printed on electronically generated credit card receipts: "no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction."[1] "Willful" violation of FACTA entitles a plaintiff to recovery between $100 and $1,000, plus punitive damages (if the violation was knowing) and attorneys' fees.[2] Unlike many other statutes with statutory damages,[3] there is no cap on total recovery under FACTA. Thus, in a class action, damages for a "willful" violation could be in the hundreds of millions or even billions.

### The Entrepreneurial Trial Bar

FACTA took effect on December 4, 2006. For reasons not in the record of any of the cases, much of the retail industry interpreted the statute to permit the printing of credit card and debit card receipts that included three to five of the last digits of the credit card and the expiration date. Plaintiffs argue that printing the expiration date alone violated the ambiguous statute. Of course, absolutely no identity theft can possibly take place from an expiration date, and no one claims otherwise. But with no dispositive court or regulatory ruling on the meaning of "or," and millions of potential violations occurring every day in the first weeks after FACTA took effect, the entrepreneurial trial bar sensed an opportunity. The Chicago law firm of Edelman, Combs, Latturner & Goodwin, LLC[4] has been advertising for clients to bring class actions;[5] the Los Angeles firm Spiro Moss Barness LLP has filed more than forty lawsuits.[6]

There are state law precedents to both the federal law and the litigation. For example, Ohio has a similar law, which passed and took effect in 2004.[7] An entrepreneurial lawyer, John Ferren, and his client, Nathaniel Burdge, brought a series of suits. Burdge "purposely made purchases at stores that were printing his expiration date on his receipt in order to recoup statutory damages totaling at least $12,800."[8] But Ohio's law required a plaintiff to be "a person injured by a violation."[9] Courts found that Burdge was deliberately seeking out credit card receipts, and that this suggested profit-seeking rather than injury. One court rejected Burdge's suit and sanctioned him and his attorney $3,000.[10] Burdge had previ-

Ted Frank (tfrank@aei.org) is a resident fellow at AEI and director of the AEI Legal Center for the Public Interest. This *Liability Outlook* is an expanded version of an article that appeared in the September 2007 *Class Action Watch*.

ously litigated an identical claim against a movie theater unsuccessfully.[11] The Ohio courts do not appear to have considered whether the state law was preempted by federal law.

The federal law, however, does not have the "person injured by a violation" limitation. Section 1681n(a) states, "Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." A negligent violation only entitles a customer to actual damages.[12]

## Determining Willful Violations

A recent Supreme Court case, *Safeco v. Burr*, addressed the meaning of willfulness under § 1681n(a).[13] The Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681m(a), requires notice to a consumer subjected to "adverse action" based in whole or in part on information contained in a consumer credit report. (An "adverse action" in this context is any "increase in any charge for . . . any insurance, existing or applied for.")[14] Insurance companies have found that credit reports accurately predict insurance claims rates, so they perform "credit scoring" on applicants to determine insurance rates. Respondents applied to Safeco for auto insurance and received offers of initial rates higher than the best rates possible, but Safeco sent no "adverse action" notice; a class action alleged willful violation of the FCRA. The district court held that a single, initial insurance rate was not "adverse action" and granted summary judgment for Safeco. The Ninth Circuit reversed and further held that a party willfully fails to comply with FCRA if it acts in reckless disregard of a consumer's FCRA rights.[15]

A fast-food restaurant or supermarket may face $100 to $1,000 in damages for a transaction in which there is a gross margin of a dollar or two.

The Supreme Court reversed. While it found that Safeco's offer of initial rates was "adverse action," it found that Safeco's conduct was not willful because its reading of the ambiguous statute (which had yet to be interpreted by the Federal Trade Commission or Court of Appeals) was not objectively unreasonable. But the Court also held that "[w]illful failure covers a violation committed in reckless disregard of the notice obligation."[16] Plaintiffs seek class certification in FACTA cases over the question of willfulness, and the vague standards of Safeco present obvious dangers to defendants. A fast-food restaurant or supermarket may face $100 to $1,000 in damages for a transaction in which there is a gross margin of a dollar or two.

## The California Cases

In a number of FACTA cases, Judge John F. Walter of the Central District of California has rejected class certification for FACTA cases, thus limiting the ability of the plaintiffs' bar to threaten astronomical damages. In the first such case, *Spikings v. Cost Plus, Inc.*, plaintiffs sought to certify a nationwide class of 3.4 million members against a defendant whose net worth was $316 million and whose net sales revenues were $20 million a year.[17] The minimum statutory damages would have put the defendant out of business. This threat was sufficient for the court to deny certification, especially where the defendant had immediately acted to correct its printing of the expiration date on credit card receipts. Moreover, the availability of individual actions for actual damages plus attorneys' fees meant that a class action was not needed to vindicate individual rights. Finally, and perhaps most importantly, in terms of precedent, the danger that certification would create the potential for attorney abuse of the class action procedure would be an undesirable result and encourage unnecessary litigation.

Plaintiffs have responded tactically to such dismissals. In a case against U-Haul,[18] plaintiffs attorney Farris Ain of the Herbert Hafif Law Offices in Claremont, California, has sought to certify a class limited to customers who rented in four California stores, as an alternative to a statewide class.[19] A multiplicity of such suits would still be profitable for plaintiffs' attorneys, but the smaller individual cases' damages would avoid one of the rationales for refusing certification in *Spikings*. But Judge Walter did not countenance working around *Spikings*. On August 15, he rejected class certification. First, individualized questions predominated over common questions because of the need of individualized factual determinations as to which customers qualified as "consumers" under the statute and received a FACTA-violative "receipt." Second, with an unlimited size of the class, damages sought would range from $115 million to $1.15 billion. Such *ad absurdum* damages would be "enormous and completely out of proportion to any harm suffered by the plaintiff" and thus violate due process.[20] But even limiting the class to four stores, there would be nearly 29,000 transactions, with damage figures ranging from 20 to 200 percent of the defendant's net income. Moreover, piecemeal class certification

would defeat the efficiency purposes of class actions. The court went on to repeat the other rationales in *Spikings* for denying class certification.

## The *Murray* Problem

With the possibility of a lottery-sized damages award motivating the losing plaintiffs, the Ninth Circuit will surely see one of these class certification denials on appeal. In similar circumstances, a Judge Frank Easterbrook opinion rejected flexibility in Rule 23 to bar certification of class actions just because the damages were wildly disproportionate.[21] In *Murray v. GMAC Mortgage Corp.*, a credit solicitation from Ditech to Nancy Murray violated technical requirements of the FCRA, and Murray and her family brought dozens of class actions against GMAC Mortgage and other financial institutions seeking statutory damages of $100 to $1,000 per person on behalf of large classes. The district court refused to certify a settlement class, in part because of the risk of outsized damages over a billion dollars, and called it an abusive class action. The Seventh Circuit reversed.

In the view of the *Murray* court, the appropriate role of the judicial branch is to enforce the statute as written—absurd results of disproportionate damages and all—and then to impose constitutional limits on the judgment. Of course, Judge Easterbrook is also the author of *In re Bridgestone/Firestone, Inc.*,[22] in which he recognized the dynamic that a single action can force a defendant to settle an unmeritorious case rather than risk bankruptcy from an astronomical, but mistaken, judgment. The due process argument made in the Central District cases was not addressed (and thus perhaps not raised) in *Murray*; conversely, *Spikings* did not consider *Murray v. GMAC*.

Still, if Judge Easterbrook's view about the scope of Rule 23 carries the day in the Ninth Circuit over that of Judge Walter, Congress would need to act rapidly to prevent small and medium businesses from being bankrupted punitively by FACTA and similar statutes. Congress amended the FCRA to eliminate the private remedy (leaving administrative enforcement to provide deterrence) when the loophole in that act was discovered, but it need not go that far to fix the problem with FACTA: Congress should simply add a cap for statutory class damages like those in the Fair Debt Collection Practices Act or the Truth in Lending Act. And the FACTA debacle (a miniature version of the Sarbanes-Oxley debacle[23] before it) provides a solid reminder that Congress should take more care before creating new civil remedies.

*AEI research assistant Sara Wexler and web editor Laura Drinkwine worked with Mr. Frank to edit and produce this* Liability Outlook.

## Notes

1. 15 U.S.C. § 1681c(g).

2. 15 U.S.C. § 1681n(a).

3. *See, e.g.*, 15 U.S.C. § 1692k(a)(2) (Fair Debt Collection Practices Act) (capping class damages at lower than $500,000 or 1 percent of net worth of debt collector); 15 U.S.C. § 1640(a)(2)(B) (Truth in Lending Act) (same); 15 U.S.C. § 1693m(a)(1) (Electronic Fund Transfer Act) (capping class damages at $500,000).

4. If the name of the law firm sounds familiar, it is because it is the successor to the similarly named one that negotiated the infamous *Hoffman v. BancBoston* class action settlement in which class members lost money to pay attorneys' fees. Kamilewicz v. Bank of Boston Corp., 100 F.3d 1348 (7th Cir. 1996).

5. Walter Olson, "Turn those credit slips into gold," Overlawyered.com (blog), available at www.overlawyered.com/2007/05/turn_those_credit_slips_into_g.html (May 10, 2007).

6. Robin Sidel, *Retailers Whose Slips Show Too Much Attract Lawsuits*, WALL ST. J., Apr. 28, 2007.

7. Ohio R.C. 1345.18.

8. Burdge v. Supervalu Holdings, Inc., No. C-060194, 2007 WL 865483 (Ohio Ct. App. Mar. 23, 2007).

9. Ohio R.C. 1345.18.

10. *Supervalu Holdings, supra* note 8.

11. Burdge v. Kerasotes Movie Theaters, No. CA2006-02-023, 2006 WL 2535762 (Ohio Ct. App. Dec. 5, 2006). In a telling example of the "Pigs get fed, hogs get slaughtered" saying, Burdge had originally settled the case for $2,525, but decided to demand more, and lost the case at the trial-court level and on appeal on the same lack-of-injury grounds as in *Supervalu Holdings. Id.*

12. 15 U.S.C. § 1681o(a).

13. No. 06-84 (June 4, 2007).

14. 15 U.S.C. § 1681a(k)(1)(B)(i).

15. Spano v. Safeco, 140 Fed. Appx. 746 (9th Cir. 2005).

16. Safeco v. Burr, *supra* note 13. The Court also held, in a parallel case, *GEICO v. Edo*, No. 06-100, that GEICO's conduct of offering a neutral rate based on a credit score was not an "adverse action."

17. Case No. 06-cv-8125-JFW (C.D. Cal. May 29, 2007).

18. Evans v. U-Haul Co. of Calif. Inc., No. 07-cv-2097-JFW (C.D. Cal. Aug. 15, 2007).

19. Matthew Hirsch, *Plaintiffs Attorneys Think Globally, Act Locally in Financial Privacy Cases*, THE RECORDER, Aug. 27, 2007.

20. *Evans*, *supra* note 18, citing London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 n. 5 (11th Cir. 2003) (citing Kline v. Coldwell Banker & Co., 508 F.2d 226 [9th Cir. 1974] [Truth-in-Lending Act]).

21. Murray v. GMAC Mortgage Corp., 434 F.3d 948 (7th Cir. 2006). *Murray* is also notable because the Seventh Circuit endorsed the notion that a "professional" plaintiff who brings many suits can be an appropriate class representative, though the Court did not expressly address the "typicality" requirement of the class representative in Rule 23(a)(3).

22. 288 F.3d 1012, 1015–16 (7th Cir. 2003).

23. Larry E. Ribstein & Henry N. Butler, *The Sarbanes-Oxley Debacle: What We've Learned; How To Fix It* (AEI Press 2006).