**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JULIE RHODES,<br>individually and on behalf of a class, | )<br>)<br>) | |
| Plaintiff, | )<br>) | 07 C 6385<br>Judge Holderman |
| v. | )<br>) | Magistrate Judge Denlow |
| ROCKLER RETAIL GROUP, INC.,<br>doing business as ROCKLER<br>WOODWORKING AND HARDWARE<br>and DOES 1-10, | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TO STAY PROCEEDINGS**

**I.   STANDARD OF REVIEW**

In *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007), the Supreme Court held that: "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief." 127 S.Ct. at 2200 (complaint alleging cruel and unusual punishment through the withholding of medical treatment met pleading standards). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests." 127 S.Ct. at 2200 (citing *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007) (complaint alleging antitrust conspiracy was only required to allege sufficient facts to support a "plausible claim for relief")). In *EEOC v. Concentra Health Services, Inc.*, 496 F.3d 773, (7th Cir. 2007), the Seventh Circuit held a complaint must meet two easy-to-clear hurdles: First, the complaint must provide sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; second, the complaint's allegations must raise the possibility of relief above a speculative level. 496 F.3d 773, 776. In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint. *Bell Atlantic Corp*, 127 S.Ct. at 1964.

## II. THE ALLEGED VIOLATION

Plaintiff claims that Defendant willfully violated the Fair Credit Reporting Act, 15 U.S.C. §1681 *et seq*. ("FCRA"), as amended by the Fair and Accurate Credit Transactions Act of 2003, P.L. 108-159, 117 Stat. 1952 ("FACTA").  15 U.S.C. §1681c(g)(1) provides that:

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

Plaintiff alleged that, "On October 19, 2007, plaintiff received from Rockler Woodworking and Hardware ... a computer-generated cash register receipt which displayed plaintiff's card expiration date."  (Complaint, ¶19.)  This allegation unequivocally states a fact which shows a violation of the FCRA.

The purpose of the "truncation requirement" of 15 U.S.C. §1681c(g) is to prevent identity theft or fraudulent use of credit or debit cards.  The Federal Trade Commission estimates that over nine million persons each year have their identity assumed by criminals for financial gain, causing losses in excess of $50 billion.  One common *modus operandi* of identity thieves is to steal credit card receipts and statements, and then use the information on the receipts to engage in transactions.  Identity thieves who do this are known as "carders" and "dumpster divers."  This *modus operandi* is more common than the use of sophisticated electronic means to obtain the information.  Robin Sidel, "Identity Theft  – Unplugged  – Despite the High-Tech Threat, When You Get Ripped Off It's Usually Still the Old Way," *Wall Street Journal*, Oct. 8, 2005 at B1 (Exhibit A).

The expiration date is necessary for misuse of the card number.  If an identity thief retrieves from a victim's garbage a document that contains the card number but not the expiration date (such as a monthly credit card statement), the information is not usable. However, if the monthly statement is accompanied by a credit card receipt containing the expiration date, the identity thief has all the information needed to commit fraud.

The goal of this provision was to "limit the opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166 (2003) (Exhibit B). Thieves might piece together (or "pick off," in the words of Congress) different bits of information from different sources. The expiration date of a customer's credit/debit card is one of several pieces of information that can make it easier for criminals to rack up fraudulent charges. These dates are worth protecting even when not accompanied by other important financial information. Brief of the United States In Support of 15 U.S.C. § 1681c(g), *Papazian v. Burberry Limited,* No. CV 07-1479 GPS (RZx) (C.D. Cal. 2007) (Dkt. Nos. 24 and 25) (Exhibit C).

To curb this means of identity theft, Congress prohibited merchants who accept credit cards and debit cards from issuing electronically-generated receipts that display either the expiration date or more than the last five digits of the card number. The law gave merchants who accept credit cards or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. 15 U.S.C. §1681c(g)(3). The receipt in this case was printed months after this effective date.

### III. PLAINTIFF HAS STANDING BECAUSE THE CREDIT CARD AT ISSUE BELONGS TO JULIE RHODES AND THE PURCHASES WERE MADE BY HER

Defendant argues that Plaintiff lacks standing because "on the receipt upon which Plaintiff purports to sue, a 'Jeff Rhodes' is identified - not plaintiff and proposed class representative Julie Rhodes." However, a review of Defendant's own records and computer system will explain. Jeff Rhodes is Plaintiff's husband. The only reason Mr. Rhodes' name appears on the receipt is because Mr. Rhodes has a customer account with Defendant. Mr. Rhodes' name is maintained in Defendants' computer system and appears on the receipt for any purchase made by either Julie or Jeff Rhodes. The credit card ending in 2770, which was used to make the purchase at Defendant's store on October 19, 2007, and which is the subject of the above captioned case, belongs to Julie Rhodes. The only name appearing on the credit card at issue is Julie Rhodes. The credit card is tied to a bank account solely in the name of Julie

Rhodes. (See Declaration of Julie Rhodes, Exhibit D). Julie Rhodes made the purchases at Defendant's store on October 19, 2007. Therefore, as "the cardholder at the point of sale or transaction" Julie Rhodes is the proper person to bring the present action. 15 U.S.C. § 1681 c(g)(1).

**IV.     THE 15 U.S.C. §1681c(g) TRUNCATION REQUIREMENT IS UNAMBIGUOUS AND DEFENDANTS INTERPRETATION IS OBJECTIVELY UNREASONABLE**

Defendant argues that Plaintiff cannot adequately plead a willful violation of the FCRA in this matter because Defendant's interpretation of the statute—that the expiration date may be displayed on a receipt provided that the credit card number is truncated to the last five digits or less—was objectively reasonabe. (Memorandum, p. 4). On the contrary, however, every other court to address the issue has squarely held that FACTA's truncation requirement is clear. *See Follman v. Hospitality Plus of Carpentersville, Inc.*, 2007 U.S. Dist. LEXIS 77440 (N.D. Ill. 2007) (holding that FACTA is not vague or ambiguous); *Iosello v. Leiblys*, 502 F.Supp. 2d 782, 786 (N.D. Ill. 2007) (same); *Arcilla v. Adidas Promotional Retail Operations, Inc.*, 488 F. Supp. 2d 965 (C.D. Cal. 2007) (same); *Korman v. Walking Co.*, 2007 U.S. Dist. LEXIS 63732 (E.D. Pa. 2007) (same); *Aeschbacher v. California Pizza Kitchen*, 2007 U.S. Dist. LEXIS 34852, *10-*11 (C.D. Cal. 2007) (same); *Blanco v. El Pollo Loco, Inc.*, 2007 U.S. Dist. LEXIS 31231 (C.D. Cal. 2007) (same); *Lopez v. Gymboree Corp.*, 2007 U.S. Dist. LEXIS 44461, *10 (N.D. Cal. 2007); *Ramirez v. MGM Mirage, Inc.*, 524 F. Supp. 2d 1226 (D. Nev. 2007) (same); *Soualian v. International Coffee and Tea, LLC*, 2007 U.S. Dist. LEXIS 96339 (C.D. Cal. 2007) (same); *Grabein v. 1-800-Flowers.com*, 2008 U.S. Dist. LEXIS 11757 (S.D. Fla. 2008) (same).

15 U.S.C. §1681c(g) prohibits a merchant from printing "more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder." This section of FACTA is not ambiguous. *Iosello v. Leiblys*, 502 F.Supp.2d 782, 786 (N.D. Ill. 2007), held that:

> [T]he plain language of Section 1681c(g) has only one reasonable meaning.... The plain meaning of the statute is that a merchant shall not print more than the last 5 digits of the credit card number upon any receipt *and* a merchant shall not print the expiration date upon any receipt. In other words, a retailer must print no more than five digits of a card number, and a retailer must also remove the expiration date from the credit card receipt. Printing either more than five digits of the credit card number or the expiration date of the credit card violates Section 1681c(g).

All courts considering this issue have found, just as *Iosello* did, that §1681c(g) "expressly prohibits printing more than the last five digits of the credit/debit card numbers and also prohibits printing the card's expiration date." *Pirian v. In-N-Out Burgers*, 2007 U.S. Dist. LEXIS 25384, *8 (C.D. Cal. 2007). *Pirian* held that the defendant's argument that a credit card's expiration date could be printed, so long as less than five digits of the credit card number appeared on the receipt, relies on "a tortured reading of a statute that is not ambiguous on its face." *Id*.

Similarly, *Lopez v. Gymboree Corp.*, 2007 U.S. Dist. LEXIS 44461, *10 (N.D. Cal. 2007) held that §1681c(g):

> is not vague and ambiguous because the plain language of this section has only one reasonable meaning. "No person ... shall print more than the last 5 digits of the card number or the expiration date upon any receipt" means that (1) no person shall print more than the last 5 digits of the credit card number upon any receipt and (2) no person shall print the expiration date upon any receipt. Both of defendant's proposed alternative interpretations are illogical and strained.

In short, the "plain meaning of §1681c(g) is that a retailer may not print more than the last five digits of the credit card number, and may not print the expiration date." *Aeschbacher v. California Pizza Kitchen*, 2007 U.S. Dist. LEXIS 34852, *10-*11 (C.D. Cal. 2007); *Follman v. Hospitality Plus,* 2007 U.S. Dist. LEXIS 77440 (N.D. Ill. 2007) (collecting cases and holding that "we would be inclined to agree with every other district court in the country that has addressed this issue"); *Accord Iosello, Pirian*, and *Lopez, supra*; *Arcilla*, 488 F. Supp. 2d 965; *Blanco v. El Pollo Loco, Inc.*, 2007 U.S. Dist. LEXIS 31231 (C.D. Cal., Apr. 3, 2007); *Ehrheart v. Lifetime Brands, Inc.*, 2007 U.S. Dist. LEXIS 56763 (E.D. Pa. 2007); *Korman v. Walking Co.*, 2007 U.S. Dist. LEXIS 63732 (E.D. Pa. 2007).

Defendant's reading of the statute would allow merchants to either print the entire card number as long as the expiration date is omitted or print the expiration date as long as only the last five digits of the card number are printed. This is frivolous – no one could reasonably believe that the statute gives the merchant the option of disclosing the entire card number as long as the expiration date is not printed. "No reasonable person would think this was Congress' intent." *Arcilla*, 488 F. Supp. 2d at 971.

Prohibitions on conduct often state that "no person shall do A or B." This means that "no person shall do A" and "no person shall do B." For example, the Fifth Amendment states that "No person shall ... be deprived of life, liberty or property without due process of law." This means that no person shall be deprived of life without due process, no person shall be deprived of liberty without due process, and no person shall be deprived of property without due process. One of the three is sufficient for a violation.

Contrary to the strained statutory interpretations offered by Defendant, the only rational reading of the statute is that merchants may not print any part of the expiration date and may not print more than five digits of the card number, and the digits printed must be the last ones. That is the position of the Federal Trade Commission, which reminded businesses to conform their receipts to the new law, as follows:

> According to the federal Fair and Accurate Credit Transaction Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten—or truncate—the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date. For example, a receipt that truncates the credit card number and deletes the expiration date could look like this:
>
> ACCT:\*\*\*\*\*\*\*\*\*\*\*12345
> EXP: \*\*\*\*

"FTC Reminds Businesses Law Requires Them to Truncate Credit Card Data on Receipts," May 30, 2007 [hereinafter "FTC Statement"] (Exhibit E). It is also the explanation provided to Congress. 149 Cong. Rec. H 8122, at H 8130 (Sept. 10, 2003) ("prohibit retailers from printing

the expiration date and more than the last five digits of a consumer's credit or debt card number on electronic receipts").

Most critically, it is what the card issuers told merchants to do. For example, the Visa Rules stated exactly what needed to be done, complete with a diagram of a sample receipt:

> Visa requires that all new electronic POS [point-of-sale] terminals provide account number truncation on transaction receipts. This means that only the last four digits of an account number should be printed on the customer's copy of the receipt.
>
> In addition, the expiration date should not appear at all. Existing POS terminals must comply with these requirements by July 1, 2006. To ensure your POS terminals are properly set up for account number truncation, contact your merchant bank. (Exhibit F at 62).

When a defendant is party to a contract which contains a diagramed picture of a receipt showing exactly what information had to be suppressed, its failure to make its receipts conform to that requirement is inexcusable. No merchant who desired to comply with the statute, and who was contractually obligated to comply as Defendant was here (Complaint, ¶¶39-41), could legitimately misunderstand what is required.

That the truncation requirement was readily understandable is demonstrated by the fact that the merchant community had no difficulty comprehending and complying with it. Plaintiff alleges that the overwhelming majority of retailers eliminated the entire expiration date and all but the last four or five digits of the card number. (Complaint, ¶73; see *Id*., ¶¶36, 43-59 (publication of standards by various national and state organizations)).

*Iosello*, 502 F.Supp.2d at 786, held that:

Congress enacted FACTA with the intent of helping to prevent the possibility of thieves stealing the identity of another by obtaining one's credit card number and the expiration date of that credit card. Businesses generally require one's credit card number and the expiration date of that credit card to transact business. Access to both the credit card number and the expiration date of that credit card makes it easier for a thief to commit identity theft. The existence of a law prohibiting the printing of more than the last five digits of the credit card number makes it difficult for a thief to obtain the victim's credit card number. The existence of a law prohibiting the printing of the expiration date of a credit card makes it even more difficult to commit identity theft.

Thus, Plaintiff respectfully submits that Defendant's position that "it is an objectively reasonable interpretation of FACTA to conclude that a defendant could comply with FACTA's requirement by truncating the card number but, at the same time, display the expiration date" cannot be accepted. (Motion, p. 7).

Moreover, Defendant issued a non-compliant receipt on October 19, 2007 – over two months after a Northern District of Illinois Court issued a ruling in *Iosello* that "a retailer must print no more than five digits of a card number, and a retailer <u>must also</u> remove the expiration date from the credit card receipt" (*Iosello*, 502 F. Supp.2d at 786) (emphasis added); more than four months after the FTC informed merchants that they may not include "more than the last five digits of the card number, <u>and you must</u> delete the card's expiration date" (FTC Statement, *supra*) (emphasis added); six months after the *Aeschbacher* court rejected the defendant's argument that the statute was vague and ambiguous; and more than a year after Visa required compliance with the statute. In all, Defendant's "objectively reasonable interpretation of the statute" argument ignores the overwhelming judicial consensus that 15 U.S.C. §1681c(g)'s requirements are unambiguous, the guidance offered by the FTC, and the mandate from Visa.

Rather than address those authorities, Defendant argues that because two press releases (one issued by the White House and one issued by the FTC) and some House Subcommittee testimony failed to specifically mention FACTA's full truncation requirements, 15 U.S.C. §1681c(g) must by definition be vague and ambiguous. (Memorandum at 10-11). This argument fails for two reasons. First, the plain text of the statute is clear to anyone who bothers to read it, as numerous courts have recognized. The sources cited by Defendant do not contradict the plain meaning of 15 U.S.C. §1681c(g), they simply do not offer an exhaustive list of its requirements. Second, a business that wishes to comply with a federal statute does not ignore the plain text of the law and instead adopt a strained interpretation based upon incomplete explanations of its requirements.

Defendant's argument thus runs counter to the letter and spirit of §1681c(g). This Court should therefore follow *Iosello*, *Aeschbacher* and every other court in the nation to consider this issue, and reject Defendant's claims that the statute means something other than what it plainly says.

## V.    DEFENDANT MISREPRESENTS *SAFECO*

*Safeco* requires that a plaintiff bringing a claim that a defendant violated the FCRA willfully show that the violation "is not only a violation under a reasonable reading of the statute, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 127 S.Ct. at 2215. But *Safeco* does not require that plaintiff, at the pleading stage, to definitively establish facts; as with any other complaint, plaintiff merely needs to allege a set of facts that would allow for the relief sought to be granted. Plaintiff has done more than enough to satisfy this test.

If Defendant knew what the truncation requirement of 15 U.S.C. §1681c(g) required, or knew that such a requirement existed—as Plaintiff has properly alleged—then Defendant's alleged violation of the law was, at least, reckless. *Safeco* specifically held that a reckless violation exists where the reading of the statute is unreasonable. *Safeco* at 2215. The readings of the statute suggested by Defendant are totally unreasonable, as a number of courts, the FTC, Visa and millions of merchants have correctly found. Here, Defendant knew the legal obligation. Yet its receipts contained the expiration date of Plaintiff's credit card. In fact, *Follman*, 2007 U.S. Dist. LEXIS at *9-*10, held that although "defendant here, as in *Safeco*, did not have the benefit of the FTC guidance, nor of the holdings of myriad other district courts, we find that, unlike in *Safeco*, the text of this statute is clear and open to only one reasonable interpretation, thus a 'dearth of guidance' does not render defendant's readings plausible. 127 S.Ct. at 2216."

*Safeco* relied on the *Second Restatement of Torts*, §500, in finding that a person acts recklessly when he "does an act or intentionally fails to do an act which it is his duty to the

9

other to do, *knowing or having reason to know* of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent." *Id*. (emphasis added). Here, the harm is caused by the violation of FACTA. Recklessness is demonstrated when someone either (1) knows what should be done but fails to do it or (2) should know, but avoids learning about a duty and violates that duty. *Vigortone Ag Products v. AG Products*, 316 F.3d 641, 645 (7th Cir. 2002) (recklessness exists where someone was not "careless but, worse ... closed his eyes to a known or obvious risk")); *Desnick v. American Broadcasting Cos.*, 233 F.3d 514, 517-518 (7th Cir. 2000) (reference to "ostrich defense" or "willful blindness"). As such, *Safeco* relied on *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) for the proposition that recklessness includes "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Safeco* at 2215.

The facts alleged show that Defendant knew, or should have known, that the receipts it was producing did not comply with the law. Thus, Plaintiff can sustain a claim that Defendant recklessly, or willfully, violated the FCRA.

## VI.   INTENT MAY BE AVERRED GENERALLY; THE COMPLAINT MORE THAN COMPLIES WITH THIS REQUIREMENT

Defendant claims that Plaintiff "has not (and cannot) plead *any* set of facts stating a plausible claim for a *willful* violation of FACTA." (Memorandum, p. 3). This is not true; the complaint includes the following allegations which, if shown, demonstrate recklessness:[1]

- FACTA was enacted in 2003 and gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring compliance for all machines no later than December 4, 2006 (Complaint, ¶33);

- "defendant knew or should have known of the truncation requirement" (*Id*., ¶34);

---

[1] As noted *supra*, a complaint "need only give the defendant fair notice of what the ... claim is and the grounds upon which it rests," and a court "must accept as true all of the factual allegations contained in the complaint." *Erickson*, 127 S.Ct. at 2200 (citations omitted).

- credit card companies and businesses that sell credit card readers and similar equipment "informed defendant about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant's need to comply with the same" (*Id.*, ¶35);

- the requirement was "widely publicized" among retailers, with press releases and new policies on truncation of credit card information being disseminated throughout the industry for years by credit card companies, as well as national and state associations of merchants (*Id.*, ¶¶36-59);

- credit card companies such as Visa proceeded "to require compliance with FACTA by contract, in advance of FACTA's mandatory compliance date" (*Id.*, ¶¶39-42);

- "most of defendant's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by programming their card machines and devices to comply with the truncation requirement" (*Id.*, ¶76); and

- notwithstanding the fact that defendant could have done likewise, it willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA (*Id.*, ¶¶77).

Allegations identical to, or even less than, those in the present case have repeatedly been found sufficient. *Clark v. Marshalls of MA, Inc.*, 2007 U.S. Dist. LEXIS 33492 (C.D. Cal. 2007), and *Iosello, Arcilla, Pirian, Lopez, Blanco, Ehrheart, Korman*, and *Follman, supra.* Furthermore, there have been numerous decisions by several different District Courts on the issue and the FTC's guidance on the statute's interpretation was provided well in advance of when Defendant provided the non-compliant receipt at issue in this case.

In any event, Fed.R.Civ.P. 9(b) expressly provides that "malice, intent, knowledge, and other condition of mind of a person may be averred generally." Nothing in *Bell Atlantic* purports to require anything more. Only two weeks after the *Bell Atlantic* decision, the Supreme Court in *Erickson*, 127 S.Ct. at 2200, reiterated that notice pleading applies in federal court:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" [*Bell Atlantic*, 127 S.Ct. at 1964].

11

*Erickson* held the following was sufficient: "The complaint stated that [a doctor's] decision to remove petitioner from his prescribed hepatitis C medication was 'endangering [his] life'.... It alleged this medication was withheld 'shortly after' petitioner had commenced a treatment program that would take one year, that he was 'still in need of treatment for this disease,' and that the prison officials were in the meantime refusing to provide treatment.... This alone was enough to satisfy Rule 8(a)(2)." *Erickson*, 127 S.Ct. at 2200.

*Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 782 (7th Cir. 2007), held that it was "doubtful" that "*Bell Atlantic* changed the level of detail required by notice pleading." The Seventh Circuit specifically held that *Bell Atlantic* does not eliminate notice pleading. *Id* at 771 n.1. It is necessary only to state "easily provided, clearly important facts" as allegations in a complaint. *Id.* at 782. Nor was Fed.R.Civ.P. 9(b)—which provides that "intent ... may be averred generally"—eliminated by *Bell Atlantic*. For example, *Concentra* found that a complaint which alleges that "I was turned down for a job for a reason forbidden by Title VII" would be inadequate, while an allegation that "I was turned down for a job because of my race" would be sufficient; the latter statement represents a general statement of intent acceptable under Rule 9(b). *Id*. at 781-782. A plaintiff specifically does not have to know, and allege, "every factual detail supporting [his] right; requiring the plaintiff to plead those unknown details before discovery would improperly deny the plaintiff the opportunity to prove [his] claim." *Id*. at 780.[2] See *Ehrheart*, *supra* (allegations virtually identical to those made here are sufficient under *Bell Atlantic*).

Plaintiff specifically alleges that the August 12, 2006 edition of "Rules for Visa Merchants," which is distributed to and binding upon all merchants that accept Visa cards,

---

[2] Indeed, Plaintiff—and consumers generally—are not privy to all facts known by a retail business, as they are not employed by that business. Requiring a consumer to state an all-encompassing knowledge of defendant's activities in his complaint before being able to state a claim on which relief could be granted would essentially destroy consumers' right to recover damages under any lawsuit brought under a consumer protection statute.

12

expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." Visa required complete compliance with this requirement by July 1, 2006—five months ahead of the statutory deadline. (Complaint, ¶40). In fact, the cited Visa Rules actually contain a picture of what information had to be deleted from the receipt. (Exhibit F).

It is utterly inconceivable that any retailer looking at the picture provided in the Visa Rules could misunderstand what was required. Plaintiff alleges that Defendant is a party to the Visa contract, and further alleges that Plaintiff's Visa card was accepted by Defendant. (Complaint, ¶¶ 40, 41). The allegations set forth go far beyond the minimum requirement.

In fact, Defendant stumbles over itself by claiming that its interpretation of FACTA "was an objectively reasonable interpretation" and thus Plaintiff cannot "allege sufficient facts to establish a plausible claim on its face that Rockler acted in a manner 'entailing an unjustifiably high risk of harm'" (Memorandum, p. 12 (quoting *Safeco Insurance Co. of America v. Burr*, 127 S.Ct. 2201, 2216 (2007)). Yet if Defendant was interpreting the statute, it knew of it. Defendant's arguments are a little like those of a murderer who claims that he has an alibi, but that if he was at the scene, he acted in self-defense. Neither claim has any credibility.[3]

### VII.  DEFENDANT'S USE OF *PROPOSED* LEGISLATION AS A BASIS FOR DISMISSAL UNDER 12(B)(6) OR A STAY OF PROCEEDINGS IS INAPPROPRIATE

Defendant's use of a proposed amendment to the Fair Credit Reporting Act ("FCRA") which has not been passed by either house of Congress as a basis for dismissal under 12(b)(6) is highly inappropriate.

Essentially, Defendant is asking for judicial abrogation of the FCRA. In *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006), however, the Seventh Circuit recognized that "[w]hile a statute remains on the books ... it must be enforced rather than subverted." 434

---

[3] At the same time, many courts have already found that Defendant's proposed reading of the statute *was* objectively unreasonable. See Part IV, *supra*.

F.3d at 952-54. (*See also*, *Ehrenfeld v. Khalid Salim Bin Mahfouz*, 2008 U.S. App. LEXIS 4481, 8-9 (2d Cir., Mar. 3, 2008) (declining plaintiff's invitation to refrain from disposing of the appeal until the legislature acted upon a proposed amendment to the state's long-arm statute that could confer jurisdiction over defendant.  Holding that "[w]hether the bill will be passed, and what the provisions of the new section of the long-arm statute may be if the bill is passed, 'are entirely in the field of uncertain speculation.'  To delay our decision because plaintiff may benefit from a possible revision of the New York jurisdictional statute would indeed 'constitute an abnegation of the judicial process.'" *Citing to Moore v. Comm'r of Internal Revenue,* 170 F.2d 191, 192 (4th Cir. 1948); and *FDIC v. Alker*, 169 F.2d 336, 337 (3d Cir. 1948).).  Even though Defendant may not approve of the language of the Fair Credit Reporting Act ("FCRA"), it remains on the books and must be enforced.  Defendant's hope that the statute may be amended is not a basis for dismissal under 12(b)(6) or for a stay of proceedings.  While hope springs eternal, it is not a rule of law.

The Unites States Supreme Court has cautioned that abstention is appropriate only in exceptional circumstances.  *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976).  Because abstention, the doctrine under which a district court may decline to exercise or postpone the exercise of its jurisdiction, is an exception and not the rule, it should rarely be invoked.  *Id.* at 817.  *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206 (1992).  The federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them."  *Colorado River*, 424 U.S. at 817.  The mere possibility that a statute may be amended is not ground to stay proceedings, as "a federal court cannot lightly abjure its responsibility to assert jurisdiction...." *Lumen Construction, Inc. v. Brant Construction Co.*, 780 F.2d 691, 694 (7th Cir. 1985).

Defendant's argument on this point is accompanied by a suggestion that the proceedings should be stayed because Plaintiff has no actual damages and Defendant would be subjected to "excessive statutory damages." (Memorandum, p. 14).  Again, this argument is

14

totally irrelevant and improper.  This concern about damages under the FCRA was addressed in full by *Murray,* in which the Seventh Circuit held that "individual losses, if any, are likely to be small—*a modest concern about privacy, a slight chance that information would leak out and lead to identity theft*. That actual loss is small and hard to quantify is why statutes such as the Fair Credit Reporting Act provide for modest damages without proof of injury." *Murray*, 434 F.3d at 953 (emphasis added).  Furthermore, a Court has the inherent ability to control statutory damages that are excessive or would violate the right to due process.  Damages "that would be unconstitutionally excessive may be reduced, see *State Farm Mutual Automobile Insurance Co. v. Campbell*, [538 U.S. 408 (2003)], but constitutional limits are best applied after a class has been certified." *Id*.

The Congress may "enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *White v. Arlen Realty & Development Corp.*, 520 F.2d 645, 649 (4th Cir. 1975); see *Alger v. Chicago*, 741 F.Supp. 617, 624 (N.D. Ill. 1990) (citing *White*, holding that standing exists where "the legislature intended to create some procedural 'right' worthy of judicial protection and that they are the intended beneficiaries of that 'right'").

## VIII.  CONCLUSION

For the foregoing reasons, Plaintiff respectfully urges the Court to deny Defendant's Motion to Dismiss or, in the Alternative, to Stay Proceedings.

                          Respectfully submitted,

                          s/ Cassandra P. Miller
                          Cassandra P. Miller

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Cassandra P. Miller
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
120 S. LaSalle Street, Suite 1800
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)
courtecl@edcombs.com

**CERTIFICATE OF SERVICE**

     I, Cassandra P. Miller, hereby certify that on March 4, 2008, a copy of the foregoing PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY PROCEEDINGS was filed electronically using the Court's CM/ECF system which will send notice to the following:

David S. Almeida (david.almeida@dbr.com)
Steven David Hamilton (steven.hamilton@dbr.com)
Drinker Biddle Gardner Carton LLP
191 North Wacker Drive
Suite 3700
Chicago, IL 60606
(312) 569-1426

                                              s/ Cassandra P. Miller
                                              Cassandra P. Miller