**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JULIE RHODES, individually and on behalf of a class, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>ROCKLER RETAIL GROUP, INC., )<br>doing business as ROCKLER )<br>WOODWORKING AND HARDWARE, )<br>and DOES 1-10, )<br>)<br>Defendants. ) | Case No.: 2007-CV-6385<br><br>Chief Judge James Holderman<br><br>Presiding Mag. Judge Morton Denlow |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ROCKLER
RETAIL GROUP, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE,
TO STAY PROCEEDINGS**

**PRELIMINARY STATEMENT**

Plaintiff Julie Rhodes' ("Plaintiff") response to Rockler Retail Group, Inc.'s ("Rockler") Memorandum of Law in Support of Motion to Dismiss or, in the Alternative, to Stay Proceedings is noteworthy only for what it fails to address. Rockler's motion asserted two independent grounds warranting dismissal, as well as an alternative request to stay the proceedings until resolution of a currently pending amendment (the Credit and Debit Card Receipt Clarification Act of 2007 (the "Bill")) to the Fair and Accurate Credit Transaction Act ("FACTA"), which would clarify Congressional intent regarding the statute.

Unable to meaningfully respond, Plaintiff's Response ignores several crucial issues, all of which support Rockler's argument that its interpretation of FACTA was not objectionably unreasonable under *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201 (2007) ("*Safeco*"). Under *Safeco*, a defendant does not willfully violate the Fair Credit Reporting Act (of which FACTA is a part) if the defendant's actions were consistent with an objectively reasonable interpretation of the statute. Plaintiff's oft-repeated argument that other courts have held that FACTA is clear and unambiguous (such that a defendant must remove the expiration date and truncate the card number) simply misses the point. Based on (i) the statements by one of FACTA's principal

drafters (Ranking Member of the House of Representatives' Committee on Financial Services Congressman Spencer Bachus) that merchants (such as Rockler) whose receipts properly truncated the credit card number and displayed the expiration date "did not willfully violate [FACTA]," (ii) the pending Congressional clarification of FACTA (the Bill), and (iii) the considerable confusion surrounding FACTA's requirements, Rockler's alleged conduct can not be a *willful* violation of FACTA as a matter of law.

At the end of the day, Plaintiff's lawsuit basically asks this Court to ignore all of these things, not to mention the senseless harm to retailers and the consuming public, as well as the needless drain on this country's judicial resources because she allegedly received a receipt which displayed an expiration date and a properly truncated credit card number (a receipt which did not even display her name). As it is an objectively reasonable interpretation of FACTA that one may print the expiration date if the card number is properly truncated, Plaintiff's Complaint should be dismissed with prejudice. Finally, in the event that this Court is not inclined to put an end to this case at this point, Rockler respectfully submits that these proceedings should be stayed so as to enable Congress to clarify FACTA. Plaintiff has not identified any legal or factual basis to justify denial of a stay.

## **ARGUMENT**

### I. THE COMPLAINT SHOULD BE DISMISSED BECAUSE THE COMPLAINT IS DEVOID OF ANY ALLEGATION THAT PLAINTIFF IS THE OWNER OF THE ACCOUNT IN QUESTION.

In response to Rockler's argument that Julie Rhodes does not have standing because the receipt in question identifies to a "Jeff Rhodes," not Plaintiff Julie Rhodes, Plaintiff, in her Response and proposed Declaration, attempts to set forth entirely new allegations that do not supplement any averments in her Complaint. Although Plaintiff does not cite *any* authority in support of her Declaration, the law in this Circuit is that a plaintiff may add essential facts by affidavit or brief in order to defeat a motion dismiss *if* the facts are consistent with the allegations of the complaint. *See, e.g.*, *Help at Home, Inc. v. Medical Capital, LLC*, 260 F. 3d 748, 752-53 (7th Cir. 2001). In this case, Plaintiff's Complaint does not set forth *any* allegations regarding the ownership of the credit card in question. As is typical in FACTA cases, Plaintiff simply utilized a boilerplate pleading that is nearly identical to the scores of complaints alleging violations of FACTA. Accordingly, Plaintiff's Response and Declaration are *not* supplementing anything. Since the Complaint does not set forth any allegations regarding the ownership of the

credit card (for which the allegedly offending receipt displayed the expiration date), it should be dismissed. *Perry v. Village of Arlington Heights*, 186 F. 3d 826, 828 (7th Cir. 1999).

More fundamentally, the simple fact of the matter is that the name Jeff Rhodes appears on the receipt; Julie Rhodes does not. That distinction is important because the likelihood that such receipt could contribute to *any* possible credit card fraud or identity theft is, at most, negligible. Plaintiff has not alleged (nor could she) that she has sustained *any* damages as a result of the display of her expiration date on a receipt which properly truncated her card number and did not even have her name on it.[1]

The stated purpose of FACTA is "to reduce identity theft and credit card fraud." (Bill, at 2:8-9.) Although similar and often confused,[2] identity theft and credit card fraud are different things that implicate different concerns. Identity theft is "a crime in which an imposter obtains key pieces of personal identifying information such as Social Security numbers and driver's license numbers and uses them for personal gain." (Identity Theft Resource Center, http://www.idtheftcenter.org) (last visited Mar. 18, 2008.) Most often perpetrators of identity theft are trying to leverage the victim's credit, employment, or criminal history to assume the victim's identity and to open new accounts in the victim's name. Data security experts have repeatedly testified "to the fact that the likelihood of committing identity theft with a truncated account number and an expiration date is negligible." (*See*, *e.g.*, Heather Mark, PhD, CISSP, CIPP, *Receipts, Expiration Dates and FACTA*, http://www.transactionworld.com/articles/2007/October/security1.asp) (last visited Mar. 18, 2008.) The reasoning behind this is simple; an expiration date is not sensitive enough information to perpetrate identity theft (*cf.* Social Security numbers, for example). *See id.*

---

[1] Plaintiff will undoubtedly state that, as a result of FACTA, she does not need any actual damages because she is entitled to statutory damages in the (unlikely) event that she can prove willfulness. As detailed below, recognition of such frivolous arguments has prompted Congress to introduce the Bill to curb these abusive lawsuits. (*See* Bill at 3:11-16 ("Despite repeatedly being denied certification, the continued appealing and filing of these lawsuits represents a significant burden on the hundreds of companies that have been sued and could well raise prices to consumers without any corresponding consumer protection benefit.").)

[2] Plaintiff, for example, repeatedly conflates the concepts of identity theft and credit card fraud. (*See, e.g.*, Response at 2 (stating, without any support, that a "monthly statement [] accompanied by a credit card receipt containing the expiration date [is] all the information an identity thief needs to commit fraud"). Rockler concedes the veracity of such patently incorrect and self-serving statements for purposes of this motion to dismiss only.

3

(stating that "[a]n expiration date is hardly sensitive information, particularly when printed in conjunction with a truncated card number"); *see also Soualian v. Int'l Coffee & Tea*, No. 07-502-RGK (C.D. Cal. June 11, 2007) ("it appears virtually impossible for the inclusion of the expiration date on a credit card or debit card receipt to result in identity theft or any actual harm").

In contrast to identity theft, credit card fraud typically occurs in "card-not-present transactions," which are credit or debit card transactions that take place over the phone or in the e-commerce environment. In order to consummate these fraudulent transactions, the perpetrator must have, at a minimum, **the name on the card and the complete credit card number**. Additionally, due to the increasing incidences of credit card fraud, most retailers require verification of CV Number (also know as the CVV2 number), which is the three to four digit code found on the back of the card), as well as the card holder's billing address. Notably, an exact match of the cardholder's expiration date is typically **not** required for such "card not present" transactions. Rather, a valid one – *i.e.*, a date occurring in the future – is all that is required. (*e.g.*, http://usa.visa.com/personal/security/visa_security_program.html (last visited Mar. 18, 2008) (stating that a "valid expiration date is a requirement").

As there is no basis to conclude that identity theft could be achieved based on display of an expiration date, and the likelihood of credit card fraud is *de minimis*, there is quite simply no conceivable way that Plaintiff could have suffered any harm as a result of the conduct alleged in the Complaint. This is particularly true because the vast majority of the major credit card companies have "zero-liability" policies by which cardholders are **not** responsible for any fraudulent charges on their credit cards. (*See, e.g.*, http://usa.visa.com/personal/security/visa_security_program/zero_liability.html (last visited Mar. 18, 2008) ("With Visa's Zero Liability policy, your liability for unauthorized transactions is $0 — you pay nothing.").)

The purpose of FACTA lawsuits such as this one is clearly not to vindicate any putative consumer rights; rather, they are driven by a cottage industry of plaintiffs (and their lawyers) seeking to take advantage of a poorly worded statute. This case is precisely the type of frivolous lawsuit that the Bill is designed to address. (*See* Bill at 3:17–22 ("The purpose of this Act is to ensure that consumers suffering from any actual harm to their credit or identity are protected while simultaneously limiting abusive lawsuits that do not protect consumers but only result in increased cost to business and potentially increased prices to consumers."); *see also id.* at 4:8–15 ("any person who printed an expiration date on any receipt provided to a consumer cardholder at

4

a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of [FACTA] for such receipt shall not be in willful noncompliance with [FACTA] by reason of printing such expiration date on the receipt.").

II. **PLAINTIFF HAS NOT REFUTED ROCKLER'S ARGUMENT THAT SHE HAS NOT STATED A CLAIM FOR A *WILLFUL* VIOLATION OF FACTA.**

By her Response, Plaintiff does *not* dispute that the United States Supreme Court's recent *Safeco* decision establishes that a defendant does not *willfully* violate FCRA if the defendant's actions were consistent with an objectively reasonable interpretation of the statutory language at issue. In this case, Plaintiff alleges that Rockler printed an expiration date on a receipt that was provided to Plaintiff. (Cplt., ¶¶ 19 & 32.) Assuming that allegation is true, Plaintiff cannot state a claim for a *willful* violation of FACTA because it is objectively reasonable to interpret FACTA as permitting the printing of the expiration date if the credit card number is truncated. Thus, although FACTA's language may be susceptible to several differing interpretations, at least one *objectively* reasonable interpretation is that the expiration date may be printed if the card number is properly truncated. (*See generally* Rockler Mem. at 4-13.) By Plaintiff's own allegations, that is precisely what Rockler did — printed an expiration date and properly truncated the card number.

Unable to disavow *Safeco's* import, Plaintiff ignores the fact that one of FACTA's principal drafters, Congressman Spencer Bachus, recently stated that:

> *Even though these companies believed they were complying with the law by truncating account numbers on receipts, the suits allege that by failing to remove the expiration dates as well, these companies willfully violated the statute.*
>
> *As one of the principal authors of FACTA, I assure you that this was not the intent of the drafters of the legislation.*
>
> *Businesses that have made good faith efforts to comply with FACTA based on a reasonable interpretation of their statutory obligations should not be subject to statutory damages intended for willful violations.*

(Rockler Mem., at 9-10 & Ex. F thereto.) Moreover, as explained in greater detail in Rockler's moving papers, the Credit and Debit Card Receipt Clarification Act of 2007 (*i.e.*, the Bill), would make it clear that the printing of the expiration date with proper truncation of the card number is

*not* a willful violation of FACTA. (*See id.* at 7-9 & Ex. C thereto). The Bill expressly states that many businesses reasonably interpreted the statute to permit the printing of the expiration date:

> ***Many merchants understood that [FACTA] would be satisfied by truncating the account number down to the last 5 digits based in part on the language of the provision as well as the publicity in the aftermath of the passage of [FACTA].***
>
> Almost immediately after the deadline for compliance passed, hundreds of lawsuits were filed alleging that the failure to remove the expiration date was a willful violation of [FCRA] even where the account number was properly truncated. ***Experts in the field agree that proper truncation of the card number, by itself as required by [FACTA], regardless of the inclusion of the expiration date, prevents a potential fraudster from perpetrating identity theft or credit card fraud.***

(*Id.*) Perhaps cognizant that enactment of the Bill (which has added an additional twenty-two co-sponsors since Rockler filed its motion to dismiss) will be the death knell for these FACTA lawsuits, Plaintiff does not even attempt to address it.

After ignoring the Bill and Congressman Bachus' statements, as well as the commentary surrounding the confusion regarding FACTA, Plaintiff argues that other federal district courts have held that FACTA's language is clear and unambiguous with respect to the question of whether printing an expiration date is a violation of FACTA. (*See* Response at 4–9.) Plaintiff's argument, however, misses the point. As an initial matter, Rockler acknowledged the decisions of those other district courts—all of which are ***not*** binding authority on this Court. (*See* Rockler Mem. at 4.) In addition to its statutory construction argument (if Congress intended to use the word "and," they could have done so (*id.* at 6-7)), Rockler respectfully submits that the printing of an expiration date with a properly truncated card number is ***not*** an objectively unreasonable interpretation of FACTA's requirements and, as such, is not a *willful* violation of FACTA such that Plaintiff is entitled to statutory damages.[3]

Finally, to extend Plaintiff's argument to its next logical step—*i.e.*, that printing the expiration date constitutes a *willful* violation of FACTA because the statute is clear and

---

[3] Plaintiff further cites to various other non-authoritative publications to argue that there is only one plausible interpretation of FACTA. For instance, Plaintiff argues that card issuing companies such as Visa, require the expiration date to be masked. (*See* Response at 7). Those alleged "rules" by Visa, however, do ***not*** mention FACTA or its requirements. Rather, it appears that those rules are simply Visa's own private requirements for its customers.

unambiguous—defies logic and sound public policy. In particular, it would completely vitiate any willfulness requirement because it would mean that a putative violation of FACTA (by printing the expiration date) is a *per se* willful violation. Plaintiff has not (and cannot) allege a willful violation of FACTA by Rockler as a matter of law. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

### III. ALTERNATIVELY, A STAY PENDING CONGRESSIONAL CLARIFICTION OF FACTA IS APPROPRIATE.

In response to Rockler's alternative request to stay proceedings pending Congressional clarification of FACTA, Plaintiff disingenuously states that Rockler is utilizing the Bill as a basis for dismissal. Based on this flawed premise, Plaintiff contends that Rockler is "asking for judicial abrogation of the FCRA." (Response at 13.) In actuality, Rockler is seeking a stay to avoid the potential of inconsistent rulings by the numerous federal district and appellate court that are faced with over ***350*** of these cases. Rockler's request for a stay is not asking this Court to abrogate FACTA. On the contrary, by its request, Rockler is asking this Court to exercise its inherent powers to stay this proceeding so that Congress may have an opportunity to clarify its admittedly ambiguous statute, rather than risk inconsistent rulings from the trial and appellate courts.

Moreover, this case has ***absolutely nothing*** to do with abstention and the *Colorado River* doctrine, (*see* Response at 14), which concern notions of comity and deference when parallel proceedings are pending in both state and federal courts. *See, e.g., Medema v. Medema Builders, Inc.*, 854 F. 2d 210, 215 (7th Cir. 1988) (stating that where a claim "invokes the exclusive jurisdiction of federal courts, *Colorado River* is not appropriate"); *Francorp, Inc. v. Siebert*, 210 F. Supp. 2d 961, 970 (N.D. Ill. 2001) ("*Colorado River* abstention is inappropriate here because that doctrine is predicated on concurrent proceedings."). In support of its wholly inapposite argument, Plaintiff blatantly misrepresents the Seventh Circuit's opinion in *Lumen Construction, Inc. v. Brant Construction, Inc.*, 780 F. 2d 691 (7th Cir. 1986). *Lumen* concerned the issue of whether a federal court should abstain in a federal civil rights action in deference to a previously-filed state court action. The entirety of the partial quote upon which Plaintiff relies, (Response at 14), is "[t]he mere possibility that a statute may be amended is not ground to stay proceedings, as 'a federal court cannot lightly abjure its responsibility to assert jurisdiction***, at least when the alternative is relegating the federal plaintiff to his remedies in state court.***" *Lumen*, 780 F. 2d at 694 (emphasis added). Plaintiff also fails to inform this Court that in *Lumen*, the Seventh

Circuit affirmed the District Court for the Northern District of Indiana's *decision to stay the case in question*. *Id.* at 698.[4]

Undaunted, Plaintiff also flippantly argues that the pending congressional clarification of FACTA is not enough to warrant a stay because "it remains on the book and must be enforced." (Response at 14 (stating that "[w]hile hope springs eternal, it is not a rule of law").) Evidently, Plaintiff would have this Court believe that it does not have the authority to control the disposition of its cases in the interests of: (i) sound judicial economy; (ii) risk of inconsistent rulings; and (3) avoidance of needless expenditures of time and costs. The overwhelming weight of authority suggests otherwise. *See, e.g.*, *Landis v. North American Corp.*, 299 U.S. 248, 254 (1936) (stating that the power to stay a case is "incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"); *Walker v. Monsanto Co. Pension Plan*, 472 F. Supp. 2d 1053, 1055 (S.D. Ill. 2006) (noting that "stays are entered quite routinely") (citations omitted); *Sisseton-Wapheton Sioux Tribe v. United States*, 804 F. Supp. 1199, 1201 (D.S.D. 1992) (granting motion to stay proceedings pending promulgation of clarifying regulations by National Indian Gaming Commission).

In *Levy v. Sterling Holding Co., LLC*, the defendant sought a stay after the close of discovery based on certain proposed clarifying amendments to the Securities and Exchange Act of 1934. No. 00-994, 2004 WL 2251268, at *2 (D. Del. Sept. 27, 2004) (stating that "the SEC's proposed amendments here are clarifying, meant only to interpret the pre-existing rules and not to adopt new rules"). The District Court of Delaware, rejecting Plaintiff's arguments that the stay would be open-ended and prejudicial, entered the stay in order for the clarifying amendments to be resolved. *Id.* ("[Plaintiff] claims that he is prejudiced because the defendants

---

[4] Plaintiff's reliance on *Ehrenfeld v. Mahfouz*, No. 06-2228-cv, 2008 WL 553560 (2d Cir. Mar. 3, 2008), is likewise unavailing. In declining plaintiff's suggestion (there was no motion for stay) that the New York State legislature be afforded an opportunity to act upon a proposed amendment to New York's long arm statute that would confer jurisdiction over defendant, the Second Circuit stated "[i]f the new bill is signed into law, plaintiff may file a new action in the district court or move to reopen the judgment and amend the complaint, and the court will have the chance to properly address, in the first instance, the question of personal jurisdiction over the defendant." *Id.* at *3. Obviously (and as detailed in its moving papers), neither Rockler nor the hundreds of other FACTA defendants will be able to undo the harm that is foisted upon them by this poorly drafted statute.

8

seek an open-ended delay to a case that has been pending since 2000."). In so doing, the court observed:

> [s]taying the litigation until the SEC decides whether to adopt the proposed amendments [] will simplify the issues in this case and focus the litigation. . . . ***A stay will conserve the resources of the parties and the court.*** It will enable the court to forego deciding many of the arguments raised in the parties' cross-motions []. If the proposed amendments are rejected, the court will proceed with the case. The court will then decide the parties' cross-motions for summary judgment . . . proceed to trial if necessary. ***Not staying the proceedings, however, runs the risk of inconsistent adjudications.***
>
> \* \* \* \* \*
>
> ***By staying the action and awaiting the decision of the SEC, in the event of adoption, a further conflict with other circuit courts that will have to apply amended SEC Rules [] may be avoided.***

*Id.* (emphasis added); *see also Schnadig Corp. v. Collezione Europa U.S.A.*, No. 01 C 1697, 2001 WL 766898, at *2 (N.D. Ill. July 5, 2001) (staying action and recognizing that the court "has broad discretion to stay proceedings as an incident to its power to control its own docket"); *Jackson v. Van Kampen Series Fund, Inc.*, No. 06-cv-944-DRH, 2007 WL 1532090 (S.D. Ill. May 24, 2007), at *2 (granting, *sua sponte*, stay because upcoming appeals "will have significant effect on the ultimate disposition of the [case]"); *Walker v. Merck & Co., Inc.*, No. 05-CV-360-DRH, 2005 WL 1565839 (S.D. Ill. June 22, 2005), at *2 (granting stay; "[i]n short, on balance, the Court believes that the interest of judicial economy and the threat of inconsistent rulings outweigh the prejudice to Plaintiffs"); *Cheyney State College Faculty v. Hufstedler*, 703 F. 2d 732, 733-4 (3d Cir. 1983) (affirming issuance of a stay pending disposition of administrative proceedings).

      Enactment of the Bill will have a profound impact on the current epidemic of FACTA lawsuits, the vast majority of which solely allege that the defendant violated the statute by displaying the expiration date. The bipartisan Bill (currently before the House Subcommittee on Financial Institutions and Consumer Credit) will have retroactive effect and require putative plaintiffs attempting to sue for display of an expiration date only to allege (and ultimately to prove) actual harm to be entitled to recover. (Bill at 4:7–22, Rockler Mem., Ex. C.)  Issuance of a stay pending disposition of the Bill is a reasonable and prudent exercise of this Court's power to control its docket and to effect justice. The opportunistic lawsuits occasioned by legislative missteps are best remedied by Congress, for they know better than anyone what they meant.

(*See, e.g.*, Ex. F (stating that "[a]s one of the principal authors of FACTA, I assure you that this was not the intent of the drafters of the legislation").)

Moreover, Plaintiff completely ignores (and presumably hopes that this Court will as well) the considerable hardship that is inuring to Rockler as a result of this lawsuit. Despite the fact that experts in the industry agree that the display of an expiration date alongside a properly truncated number is of no consequence (and Plaintiff has not alleged any harm), defendants such as Rockler are placed in the unenviable situation of either capitulating to a coercive settlement or expending tremendous amounts of time, energy, and resources defending themselves against an extortionate lawsuit. (*See, e.g.,* U.S. Chamber of Commerce, http://www.uschambermagazine.com/content/0803_cr.htm (last visited Mar. 19, 2008) (recognizing that the Bill would "close[] the loophole of a well-meaning law that led to small businesses being hit with abusive lawsuits even where no evidence of fraud or harm exists"). Notably, none of the harm foisted upon Rockler can be undone at a later date, even if the Bill is enacted. (*See* Tim Schooley, *New Identity Theft Rules Ensnare Local Retailers in Litigation*, Pittsburgh Business Times, November 23, 2007) (http://pittsburgh.bizjournals.com/pittsburgh/stories/2007/11/26/story4.html) (referring to FACTA lawsuits as "legal extortion").

Conversely, Plaintiff has not asserted (and indeed cannot show) ***any*** prejudice in the granting of a stay. The mere fact that a stay will delay an action is insufficient to show prejudice, since a slight delay is inherent to every stay and is outweighed by the benefit to the parties and the Court. *See Levy,* 2004 WL 2251268, at *3 (granting stay where plaintiff could not "point to any way that he will be unduly prejudiced by the stay" and the "balance of harms weighs in favor of a stay"). On November 9, 2007, Plaintiff filed a Complaint alleging that, although she did not have any harm, she had received a receipt in violation of FACTA. The case is still at the pleading stage and no discovery has commenced. In her Response to Rockler's alternative request for a stay, Plaintiff cites a few ill-fitting legal theories and selectively quotes cases that favor imposition of a stay. Quite simply, Plaintiff has not identified any prejudice that would befall her as a result of a stay pending Congressional clarification of FACTA.

10

## **CONCLUSION**

For the foregoing reasons Defendant, Rockler Retail Group, Inc. respectfully requests that this Court dismiss Plaintiff's putative Class Action Complaint with prejudice or, alternatively, stay the proceedings pending resolution of the Bill.

Dated: March 19, 2008                    Respectfully submitted,

**ROCKLER RETAIL GROUP, INC.**

     /s/ David S. Almeida
        One of Its Attorneys

Gordon B. Nash, Jr.
David S. Almeida
Steven D. Hamilton
**DRINKER BIDDLE & REATH LLP**
191 N. Wacker Drive, Suite 3700
Chicago, IL 60606
(312) 569-1000 (telephone)
(312) 569-3000 (facsimile)

*Attorneys for Rockler Retail Group, Inc.*

## **CERTIFICATE OF SERVICE**

I, David S. Almeida, hereby certify that on March 19, 2008, the foregoing **Reply Memorandum of Law in Further Support of Rockler Retail Group, Inc.'s Motion to Dismiss or, in the Alternative, to Stay Proceedings** was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

/s/ David S. Almeida